**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**MEDICUM-LP, LTD,**
      **A Ukrainian corporation,**
      **Plaintiff,**

    **V.**                               **CASE NO.:**

**MYLIN MEDICAL SYSTEMS, INC.,**
      **An Illinois corporation,**
**And**                                    JURY TRIAL DEMANDED

**MICHAEL GLYNN,**
      **Defendants.**

## COMPLAINT

NOW COMES MEDICUM-LP, LTD. ("MEDICUM"), a Ukrainian corporation, by and through undersigned counsel, and hereby files this Complaint against the Defendants MYLIN MEDICAL SYSTEMS, INC. ("MMS"), an Illinois corporation, and MICHAEL GLYNN ("GLYNN"), an individual, and alleges as follows:

## JURISDICTION AND VENUE

1. This is an action for damages, which exceeds Seventy Five Thousand Dollars ($75,000.00), excluding attorney fees, costs, interest and treble damages.

2. This case is filed pursuant to 28 USC 1332 (a)(2), diversity jurisdiction between a citizen or subject of a foreign state and citizens of a State, whereby Plaintiff is a corporation organized under the laws of the Ukraine with a principal place of business in Dniprodzerzhynsk, Ukraine; the Defendant corporation is organized under the laws of the State of Illinois, with its principal place of business in Burr Ridge, Illinois; and the

individual Defendant is the president of the Defendant corporation and a resident of the State of Illinois.

3. Venue is proper, in that all of the acts or omissions forming a basis of the claims occurred in the Northern District of Illinois.

4. Plaintiff MEDICUM, a Ukrainian corporation, is a medical diagnostic center in the City of Dniprodzerzhynsk, Ukraine.

5. Defendant MMS, an Illinois corporation, is in the business of selling medical equipment including magnetic resonance imaging systems, also referred to herein as "MRI systems."

6. Defendant GLYNN is an individual residing in the State of Illinois, and is the owner, president and registered agent of MMS.


## COUNT I: BREACH OF CONTRACT AGAINST MMS

7. On or about December 4, 2012, MEDICUM and MMS entered into a contract ("Contract") for the purchase and sale of a certain MRI system, a Philips 3.0T Achieva MRI System (the "MRI System").

8. A copy of the Contract is attached hereto as Exhibit A.

9. MEDICUM paid the purchase price of $342,000 and otherwise performed the Contract.

10. MMS breached the Contract in various manners causing damages to MEDICUM.

11. MEDICUM repeatedly notified MMS of the various breaches and MMS refused to cure or pay for the cure of any such breaches, and in fact, the response of MMS to these notifications was: "These things just happen."

12. MMS breached the Contract by dramatically miscalculating the weight of the MRI System. MMS specified an erroneous weight of the MRI System on the packing/shipping

documents at 10,000 lbs., whereas, the actual weight of the MRI System was 17,410 lbs.

13. This 7,410 lbs. error caused MEDICUM the following damages:

    (a) DHL, the transporter for the MRI System from MMS to MEDICUM, charged MEDICUM a fine for gross miscalculation of weight since the correct weight of the MRI System required DHL to obtain and use special equipment at O'Hare airport to move the equipment to the aircraft.

    (b) The obtaining of special equipment at O'Hare caused a delay in the shipment, thus requiring MEDICUM to purchase additional liquid helium for the MRI System, as explained later herein.

    (c) DHL also had to make additional arrangements to provide additional trucks to transport the MRI System from the aircraft in Europe to the destination in Ukraine, which caused further transportation delays.

14. MMS further breached the Contract when it failed to provide all required components of the MRI System in the shipment, including the pipes, which carry liquid helium in the MRI System.

15. These liquid helium pipes are designed to connect the compressor cooling system with the magnet of the MRI System. The cooling system of the magnet cannot operate without the liquid helium pipes.

16. Thus, MEDICUM incurred damages by MMS' failure to provide the required liquid helium pipes, as follows:

    (a) MEDICUM had to purchase and replace the missing liquid helium pipes.

    (b) When the cooling system of the MRI System operates, the liquid helium in the MRI System evaporates at the normal rate of app. 1% percent every ten days. When the

cooling system of the MRI System is not operating, the liquid helium in the MRI System evaporates at a very high rate of *3.33% per day*. If the cooling system of the MRI System is not operating and all the liquid helium in the MRI System evaporates, the magnet becomes "warm". To return the magnet to a "cold" state is extremely expensive.

(c) MEDICUM maintained the magnet at a cold state by purchasing additional liquid helium for the MRI System.

17. MMS further breached the Contract by not providing "a Rebuilt Cold Head" as part of the "all components" of the MRI System.

18. The Cold Head is located inside the magnet. The function of Cold Head is to remove heat from magnets so that liquid helium evaporates from the MRI System at a slower rate.

19. First, as delivered, the Cold Head was not "rebuilt" during the two years prior to its purchase by MEDICUM.

20. According to the industry standards, the displacer located inside the Cold Head is to be replaced every two years.

21. Second, the Cold Head was defective and did not function upon the purchase of the MRI System.

22. Thus, MEDICUM was required to have the Cold Head of the MRI System rebuilt, repaired and parts replaced, incurring further damages.

23. Due to MMS' breaches of the Contract, including the gross weight miscalculation of the MRI System, considerable delays in shipment, missing liquid helium pipes that needed to be purchased, and the non-functional Cold Head of the MRI System, liquid helium dissipated from the MRI System at the rate of 3.33% per day rather than the normal rate

of 1% per *ten* days, requiring MEDICUM to purchase additional liquid helium, at substantial cost to MEDICUM.

24. While the MRI System was still at O'Hare airport, MMS delivered additional liquid helium to MEDICUM at extra charge to MEDICUM.

25. MEDICUM continued to purchase additional liquid helium until the required repairs and replacement of parts to the MRI System were completed approximately six months following its purchase.

26. Further, due to the considerable delays in shipment of the MRI System, and making the required repairs and replacement of parts to the MRI System, MEDICUM did not have the use of the MRI System for app. half a year, thus causing MEDICUM lost profits as a result.

27. Plaintiff has retained legal counsel and incurred and will continue to incur attorney fees and costs in prosecution of this action.

28. The Contract provides for attorney fees and costs to the prevailing party, and MEDICUM is seeking reimbursement of same.

WHEREFORE, Plaintiff requests this Honorable Court to award actual, exemplary and consequential damages, in an amount in excess of $75,000; to award lost profits that MEDICUM has incurred; to award attorney fees and costs for this action; and provide such further relief as is deemed just and equitable.

## COUNT II: BREACH OF WARRANTIES AGAINST MMS

29. Plaintiff re-alleges and re-avers paragraphs 7 through 28 as if fully set forth herein.

**Breach of Express Warranty**

30. The Contract contains the following warranty provision ("Warranty Provision"):

> "Seller warrants that [it] sells all the components that are sufficient to build the system in a different place. The system described herein is "used". The system is sold, as is, where is with no warranties whatsoever. Seller is not providing for the installation of this System therefore the Seller provides no warranty of operability and will have no liability for any failure of the equipment."

31. The law provides that an express warranty is created whenever goods (the MRI System) conform to the affirmation or promise contained in the Contract. 810 ILCS 5/2-313.

32. Furthermore, the description of the goods (the MRI System) creates an express warranty that goods will conform to such description. *Id*.

33. MMS promised to, "sell **all** the components that are sufficient to build the system in a different place." [Emphasis added]. Specifically, MMS promised to deliver the missing liquid helium pipes and the "Rebuilt Cold Head and Absorber" of the MRI System.

34. MMS's promises demonstrate the intent of the parties and are inconsistent with the general exclusionary language of the Warranty Provision. ("Exact or technical specifications displace an inconsistent sample or model or general language of description." 810 ILCS 5/2-317).

35. MMS breached the express warranty of the Contract when it failed to include all components of the MRI System (helium pipes were missing), and promised to deliver a "Rebuilt Cold Head" which was not rebuilt in the last two years prior to the purchase of the MRI System, and was defective.

**Breach of Implied Warranties of Merchantability and Fitness**

36. MMS is a "Merchant" as defined pursuant to the Article 2 of the Illinois Uniform

   Commercial Code. 810 ILCS 5/2-104.

37. Every contract for the sale of goods carries an Implied Warranty of Merchantability. 810

   ILCS 5/2-314.

38. Similarly, every contract for the sale of goods carries an Implied Warranty for Fitness for

   Particular Purpose. 810 ILCS 5/2-315.

39.      "To exclude or modify the implied warranty of merchantability or any part
         of it the language **must mention merchantability and in case of a
         writing must be conspicuous,** and to exclude or modify any implied
         warranty of fitness the exclusion must be by a writing and conspicuous."
         810 ILCS 5/2-316. [Emphasis added].

40. The subject Warranty Provision is deficient and does not effectively exclude the implied

   warranty of merchantability and does not exclude or modify any implied warranty of

   fitness for the following reasons:

   (a) the language does not mention "merchantability"; and

   (b) the writing is not "conspicuous," as it is defined under the 810 ILCS 5/1-201.

41. Further, the phrase "as is" within the subject warranty provision is ineffective, in that it is

   not accompanied by the strict guidelines for exclusions of implied warranties, as follows:

   a.   MEDICUM, before entering into the contract, did not examine the goods or the

        sample or model of the MRI System, and as such, there is no implied warranty

        with regard to defects which an examination ought in the circumstances to have

        revealed to it; and,

   b.   The parties do not have a course of dealing with each other or course of

        performance or usage of trade that would apply. (810 ILCS 5/2-316).

42. Additionally, the "as is" provision is defeated because of the MMS' specific promises to, "sell **all** the components that are sufficient to build the system in a different place." [Emphasis added].

43. Specifically, MMS promised to deliver the missing liquid helium pipes and the "Rebuilt Cold Head and Absorber" of the MRI System.

44. The Cold Head was defective and/or was not rebuilt.

45. MMS's promises demonstrate the intent of the parties and are inconsistent with the "as is" exclusionary language of the warranty provision. ("Exact or technical specifications displace an inconsistent sample or model or general language of description." 810 ILCS 5/2-317).

46. MMS breached its express warranty in the Contract, as well as the implied warranty of merchantability and implied warranty of fitness for a particular purpose as aforesaid.

47. MEDICUM suffered damages as a direct result of MMS's breach of the warranties in excess of $75,000.

WHEREFORE, Plaintiff requests this Honorable Court to find that MYLIN breached express warranty, implied warranty of merchantability and implied warranty for a particular purpose; award Plaintiff damages in an amount in excess of $75,000; and provide such further relief as is deemed just and equitable.


**COUNT III: FRAUD AGAINST MMS AND GLYNN**

48. Plaintiff re-alleges and re-avers paragraphs 7 through 28 as if fully set forth herein.

49. GLYNN is the founder, owner, president and a registered agent of MMS and executed the subject Contract.

50. For all matters complained of in this Count, GLYNN acted on his own behalf as well as on behalf of MMS. Thus, references to the Defendants in this Count mean GLYNN and MMS, jointly and severally.

51. The Defendants made various false representations of material fact, which the Defendants knew MEDICUM would rely upon and, MEDICUM did rely on such false statements to its detriment, causing substantial damages to MEDICUM.

52. Personal liability arises from fraud or injustice perpetrated on third persons (MEDICUM) when dealing with a corporation in circumstances that there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and circumstances exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. (Fontana v. TLD Builders, Inc., 362 Ill. App. 3d 491, 500 (2005). Such is the case at bar.

**First False Representation**

53. The Defendants made a representation of material fact that the MRI System weighed 10,000 lbs.

54. This was false, in that the MRI System weighed 17,410 lbs.

55. The Defendants knew or should have known this statement to be false.

56. MEDICUM reasonably relied upon Defendants' false representation, resulting in the various damages aforesaid.

**Second False Representation**

57. The Defendants made a representation of material fact that the MRI System contained all components necessary for assembly at its final destination in the Ukraine.

58. This was false, in that there were missing liquid helium pipes.

59. The Defendants knew or should have known this statement to be false.

60. MEDICUM reasonably relied upon Defendants' false representation, resulting in various damages aforesaid.

**Third False Representation**

61. The Defendants made a representation of material fact that the Cold Head of the MRI System was "rebuilt," and they implied that the MRI System was in good and working order.

62. This was false, in that the Cold Head was not rebuilt, and it was defective.

63. MEDICUM reasonably relied upon Defendants' false representation, resulting in damages aforesaid.

64. MEDICUM, to whom the foregoing false representations were made, had a right to rely on all such representations, and in fact did so by following through with the purchase of the MRI System for the amount specified in the Contract.

65. The Defendants knew or should have known that the foregoing representations were untrue when made in that the Defendants advertise themselves on their website as: "We are the oldest buyer and seller of used Diagnostic Imaging Equipment in the country [since 1984]."[1] The website proceeds to depict medical equipment similar to the subject MRI System.

66. Thus, given the Defendants' alleged substantial experience in the sale of such heavy medical equipment for over 30 years, they knew or should have known how much the MRI System weighed such that a miscalculation approaching half its actual weight (a

---

[1] http://www.mylinmedical.com/index.php?main_page=page&id=3 (07.07.2014).

7,410 lb. mistake) is uncharacteristic of anyone with 30 years experience in the field; the Defendants knew or should have known whether all components of the MRI System were included (missing liquid helium pipes); the Defendants knew or should have known whether the Cold Head was rebuilt, and further whether the MRI System was defective.

67. Moreover, the Defendants knew or should have known that if any of the following three occurrences took place with regard to the sale of the MRI System: considerable transportation delays, missing helium pipes and non-functional Cold Head; it/they would cause liquid helium in the MRI System to evaporate at a rapid rate requiring MEDICUM to purchase additional liquid helium, and for MEDICUM to suffer lost profits during the period of time that required repairs and replacement of components to the MRI System.

68. In fact, MMS knew or should have known that liquid helium was evaporating at a rapid rate when it delivered additional liquid helium for the subject MRI System to O'Hare airport at an additional cost to MEDICUM.

69. The Defendants' false representations were made for purpose of inducing MEDICUM to act upon them, and led to injury to MEDICUM resulting in substantial damages in excess of $75,000.

70. Punitive damages are proper in this case, in that the Defendants acted fraudulently, with actual malice, deliberate oppression, or in a grossly negligent manner.

Wherefore, Plaintiff requests this Honorable Court to find both Defendants have committed fraud, to award to Plaintiff damages including punitive damages, and provide such further relief as is deemed just and equitable.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


By: _____ s/ Jane Kim
One of Plaintiff's Attorneys


JANE KIM, ARDC No. 44610
jane@kyzlaw.com

YOUNG KIM, ARDC No. 46990
yk@kyzlaw.com

KYZ Law, P.C.
300 N LaSalle Street
Suite 4925
Chicago IL 60654
312.945.7795
e-fax 815.717.9595

Attorneys for MEDICUM-LP, LTD